**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DAMON D. TERRY,

                    Plaintiff,                         **Case No. 2:06-cv-720**
                                                     **JUDGE GREGORY L. FROST**
      v.                                  **Magistrate Judge Mark R. Abel**

CITY OF COLUMBUS, et al.,

                    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment

(Doc. # 21) filed by Defendants the City of Columbus and officers Anthony Richardson, Eric

Everhart, Pamela Rhodeback, Laurie Carney, and Tim Peters, a memorandum in opposition

(Doc. # 23) filed by Plaintiff, Damon D. Terry, and a reply memorandum (Doc. # 25) filed by

Defendants.  For the reasons that follow, this Court finds the motion well taken only in part.

### I.  Background

On February 24, 2003, at approximately 11:00 p.m., Lillian Truss was driving Bernard

Smith and Plaintiff, Damon D. Terry, in Truss's blue four-door Mercury Mystique to the

Franklin County Municipal Court so that Plaintiff could pay a fine.  Truss, Smith, and Plaintiff

left the Clerk's office approximately fifteen minutes later.  While Truss was driving, she and her

passengers noticed a Columbus police car behind them.  Meanwhile, around 11:30 p.m.,

Columbus Police radioed that an armed robbery had just occurred at the Dairy Mart on 904

South High Street. The Dairy Mart robbers were said to be two armed black males that were

thought to be going east on Whittier Street in a blue Ford or Mercury compact car.

1

At approximately 11:32, Sergeant Tim Peters was driving north on Parsons Ave. when he observed a blue Mercury Mystique.  The vehicle and its passengers matched the description of the getaway vehicle, and the location of the vehicle was consistent with the time and direction of the flight of the robbers.  The Mercury had stopped at a traffic light on Parsons Ave., and when it made a left turn, Peters turned to follow it.  Plaintiff contends that Peters sped up to follow the Mercury, but that Lillian Truss maintained a proper speed limit.  However, Peters asserts that the Mercury increased its speed. Peters followed the Mercury into a Shell gas station.  By the time the Mercury had pulled into the gas station, Peters had already requested back-up; Peters, along with officers Laurie Carney, Eric Everhart, Anthony Richardson, and Pamela Rhodeback initiated an investigative stop.

Plaintiff claims that Defendants Peters, Everhart, Richardson, and Rhodeback, "exited their police cruisers as if they were combatants in a hostile war. They approached the Mercury as if they were storm troopers." (Doc. # 23-2, Terry Aff. ¶ 9.)  Plaintiff avers that Defendants began screaming, and because all of the defendants were yelling at the same time, it was impossible for Plaintiff to understand what was being said.  However, Plaintiff, Truss, and Smith all contend that they heard threats of serious and deadly bodily harm, including a threat to shoot them, from at least one of the defendants.  Plaintiff asserts that he feared for his life, as did Truss and Smith.  Peters asserts that the officers, all of whom were in uniform, made a felony stop with their weapons drawn because the Dairy Mart robbers were armed.

Defendants ordered Plaintiff, Truss, and Smith to show their hands.  Truss and Smith complied and were removed from the vehicle by Officers Carney and Everhart, respectively.  Plaintiff contends that Officer Richardson opened his door, reached into the car, and used

unnecessary and excessive force without any warning, provocation, or justification to remove Plaintiff from the vehicle.  Plaintiff further asserts that he had shown his hands as instructed and that had he been given the chance, he would have exited the vehicle as ordered.

After Richardson removed Plaintiff from the vehicle, they took a few steps together until Plaintiff pulled away from Richardson and started to run.  Plaintiff asserts that his flight was an instinctive response to a natural tendency for self-preservation because he feared for his life and safety.  He avers that he only took six or seven steps before realizing that his efforts were futile, at which point he stopped, raised his hands above his head, and yelled, "I give up."  (Doc. # 23-2, Terry Aff. ¶ 15.)

Richardson states that he caught Plaintiff as he was running away and that both men fell to the ground, struggling.  Richardson was trying to get control of Plaintiff's hands to handcuff them.  Richardson contends that he believed that Plaintiff might have a weapon.  However, Plaintiff asserts that Richardson struck him in the head and violently tackled him to the ground while Plaintiff was standing in a surrender position.  Plaintiff argues that at no time in the encounter did he resist.

Peters asserts that he struck Plaintiff twice with his flashlight near the top of the shoulder blade to gain compliance while Plaintiff was still on the ground.  Peters next argues that he tried unsuccessfully to move Plaintiff's arm behind Plaintiff's back.  Richardson contends that because he still feared that Plaintiff was securing a handgun, he struck Plaintiff several times in the face and head to gain control.

Plaintiff asserts that, while he was defenseless on the ground, Everhart, Peters, and Rhodeback joined Richardson in physically assaulting him by kicking him, sitting on him, and

striking him.  Plaintiff argues that the officers violently rolled him onto his stomach, sat on him with all their weight, and pressed his head down onto the ground.  Plaintiff also contends that he screamed to the officers that he could not breathe and that he was in severe pain.

During a search of Plaintiff, 22.5 grams of crack cocaine and a small amount of marijuana were found in his possession.  Plaintiff was charged with felony drug abuse, resisting arrest, obstructing official business, and misdemeanor drug abuse.

On March 10, 2003, Sergeant Barbara Benston of the Internal Affairs Bureau interviewed Plaintiff by telephone.  Benston contends that Plaintiff admitted that when the armed uniformed police officers extracted the occupants from the vehicle, Plaintiff was high on drugs and had tried to run. Plaintiff said that he had been smoking "primos," a mixture of marijuana and cocaine, and that he was " 'spooked out of [his] mind.' "  (Doc. # 25-2, Benston Aff. ¶ 2.) Plaintiff also told Benston that he had been punched in the back of the head approximately fifteen times, punched in the face approximately ten to fifteen times, punched in the eye approximately fifteen times, kicked in the ribs approximately thirteen times, and thumbed in the eye once.

On August 23, 2007, Plaintiff filed a civil complaint against Defendants City of Columbus, Anthony Richardson, Eric Everhart, Pamela Rhodeback, Laurie Carney, Tim Peters, and John Doe.  (Doc. # 2.)  The Complaint asserts the following claims for relief: assault and battery, negligent and intentional infliction of emotional distress, excessive use of force under 42 U.S.C. § 1983, deprivation of freedom from illegal search and seizure, false arrest, false imprisonment, and malicious prosecution, as well as deprivation of rights secured under 42 U.S.C. § 1985.

4

On March 4, 2008, Defendants filed a Motion in favor of Summary Judgment.  (Doc. # 21.)  The motion asks for a judgment regarding Plaintiff's claims for false arrest, false imprisonment, illegal search and seizure, any claim for malicious prosecution, excessive force, assault and battery, emotional distress, and the state law claims asserted by the Plaintiff.

## II.  Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion

### A.  False Arrest, False Imprisonment, Illegal Search and Seizure, and Malicious Prosecution Claims

Defendants first move for summary judgment on Plaintiff's claims for false arrest, false imprisonment, illegal search and seizure, and malicious prosecution.  They reason that because Plaintiff pled guilty and was subsequently convicted in state court, he is precluded from now asserting these claims in federal court.  Plaintiff responds to this argument in his memorandum in opposition by stating that he voluntarily dismisses these claims.

Plaintiff's attempt at dismissal is of no effect.[1]  It is unclear under which Federal Rule of Civil Procedure Plaintiff thinks he can effectuate a dismissal via a memorandum in opposition as opposed to by a motion.  No portion of Federal Rule of Civil Procedure 41, for example, can provide Plaintiff the appropriate vehicle for dismissal here.  The Sixth Circuit has suggested, without conclusively deciding the issue, that the dismissal of all claims against less than all defendants should be pursuant to Federal Rule of Civil Procedure 21 as opposed to Rule 41.  *See Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 265-66 (6th Cir. 2003), *recognized as overruled on other grounds in Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636 (6th Cir. 2008).  *See also AmSouth Bank v. Dale*, 386 F.3d 763, 778 (6th Cir. 2004).  Additionally, Plaintiff has neither filed a motion under Rule 21 nor sought to amend his complaint under Rule 15 to eliminate the claims at issue.  Plaintiff's claims for false arrest, false imprisonment, illegal search and seizure, and malicious prosecution therefore remain part of this litigation and are consequently subject to summary judgment.

---

[1]  For these same reasons, Plaintiff's attempted dismissal of Defendants Carney and the City of Columbus is of no effect.

Turning to the merits of Defendants' argument for summary judgment, the Court agrees that Plaintiff cannot avoid summary judgment on the identified claims.  There is no indication that Plaintiff did not have a reasonable and fair opportunity in the state court proceedings to litigate his contention that Defendants violated his constitutional rights under the circumstances of his arrest and detention.  Plaintiff also pled guilty in the state court.  Accordingly, Plaintiff is estopped from asserting his claims for false arrest and for false imprisonment.  *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988).  Plaintiff's claims for malicious prosecution and for illegal search and seizure similarly fail.  Absent limited exceptions that are not asserted in this case, an undisturbed conviction creates a presumption of probable cause that vitiates these claims.  *Harris v. Bornhorst*, 513 F.3d 503, 520-21 (6th Cir. 2008) (malicious prosecution); *Jacob v. Township of West Bloomfield*, 192 F. App'x 330, 334 (6th Cir. 2006) (illegal search and seizure); *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004) (malicious prosecution); *Short v. Tackett*, 100 F.3d 957, 1996 WL 637497, at *2 (6th Cir. 1996) (unpublished table decision) (illegal search and seizure).

## B.  Excessive Force, Assault, and Battery Claims

As noted, Defendants also move for summary judgment on Plaintiff's remaining 42 U.S.C. § 1983 claims.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, in order to assert a valid § 1983 claim, Plaintiff must show that, while acting under color of state law, Defendants Richardson, Everheart, Rhodeback, and Peters

8

deprived him of a right secured by the Federal Constitution or laws of the United States.[2]  *See*

*Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).

More specifically, Plaintiff asserts a § 1983 violation for excessive force.  He asserts this

cause of action against the officer defendants in both their official and individual capacities.  The

officers in turn move for summary judgment on the grounds that the amount of force involved

here was reasonable, thereby precluding any deprivation of a constitutional right, and on the

grounds that they are entitled to qualified immunity on the claims asserted against them in their

individual capacities.

The qualified immunity doctrine, under certain circumstances, operates to shield from

civil liability governmental officials, such as police officers, who are performing official duties.

*Sinick v. County of Summit*, 76 F. App'x 675, 678-79 (6th Cir. 2003).  This affirmative defense is

meant to safeguard an official's proper decision making process and offers that party potential

relief from frivolous suits.  *See D'Agastino v. City of Warren*, 75 F. App'x 990, 993 (6th Cir.

2003).  The Sixth Circuit has explained that qualified immunity "shields government officials

'from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability,

qualified immunity may entitle the official to not stand trial or face the other burdens of

litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511,

---

[2]  Defendant Carney, whom Plaintiff unsuccessfully attempted to dismiss, is entitled to
summary judgment on all claims on which she moved for summary judgment because Plaintiff
has failed to present argument or evidence of culpability as to her role in the incident.  Carney
has failed, however, to move for summary judgment on the 42 U.S.C. § 1985 claim against her.

526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive.  *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' "  *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)).  *See also Saucier*, 533 U.S. at 201; *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).  This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).  *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known").

The doctrine of qualified immunity thus recognizes that an officer can be found to have violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier*, 533 U.S. at 206.  The reasonableness of such mistakes is inherently

10

dependant upon the clarity of the legal constraints governing particular police conduct.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity."  *Wegener*, 933 F.2d at 392.  *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992).  Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right."  *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon*, 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).

The Court will therefore begin its analysis by examining whether a constitutional violation has occurred.  Prior to the events as alleged in Plaintiff's complaint, the United States Supreme Court established that the use of force is unconstitutional if it is excessive under objective standards of reasonableness.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  It was settled that at the time of the underlying events here that the use of force must be reasonable; if no force was required, then no force was necessary.  *See id*. at 394; *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997) (citing *Adams v. Metiva*, 31 F.3d 375, 384-85 (6th Cir. 1994)).

A great deal of discretion is afforded police officers when evaluating reasonableness in such situations so that "[i]f the officer's mistake as to what the law requires is reasonable . . .[he] is entitled to the immunity defense."  *Magrum v. Meinke*,  332 F. Supp. 2d 1071, 1078 (N.D. Ohio 2004).  *See also Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) ("A police officer

11

may be entitled to qualified immunity, obviously, even though he has in fact violated the plaintiff's rights; 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" (citations omitted)).

Accordingly, to determine whether qualified immunity applies, this Court must determine whether the officer defendants' conduct was reasonable. Courts have indicated the difficulty of this determination, stating that

> ascertaining the reasonableness of force used is not capable of precise definition or mechanical application, [and] the analysis focuses on the specific facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Magrum*, 332 F. Supp. 2d at 1078 (quoting *Graham*, 490 U.S. at 396). The *Magrum* court goes on to state that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Thus, a determination of whether the amount of force used was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ewolski v. City of Brunswick*, 287 F.3d 492, 507-08 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). *See also D'Agastino*, 75 F. App'x at 994. The "objective reasonableness standard" applied in this inquiry asks whether a reasonable officer would conclude that the level of force used was appropriate. *Graham*, 490 U.S. at 396-97. This standard balances the cost to the individual against the government's interest in effectuating a seizure; it contains a built-in

12

measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396 ).

In light of the foregoing and cognizant of the applicable summary judgment standard that must control today's analysis, this Court is not able to agree with the officer defendants that no constitutional violation occurred and that they are entitled to qualified immunity. This is because, as the earlier summary recitation of evidence indicates, there is a factual dispute as to what occurred during Plaintiff's arrest.

Plaintiff asserts that from the outset of the incident, the officers aggressively exited their police cruisers and began screaming. (Doc. # 23-2, Terry Aff. ¶ 9-10.) The officers aver that they treated the situation as a felony stop because they believed that Plaintiff could be one of the Dairy Mart robbers. (Doc. # 21-1, Peters Aff. ¶ 2; Doc. # 21-6, Rhodeback Aff. ¶ 2; Doc. # 21-4, Everhart Aff. ¶ 2; Doc. # 21-3, Richardson Aff. ¶ 2.) Plaintiff contends that Richardson used excessive force when removing Plaintiff from the vehicle by opening the door, reaching into the vehicle, and pulling Plaintiff out of the car, even though his hands were raised. (Doc. # 23-2, Terry Aff. ¶ 13.) Richardson states that he was the one to remove Plaintiff from the car, but he does not describe the degree of force used. (Doc. # 21-3, Richardson Aff. ¶ 2.)

The parties agree that after he was removed from the car, Plaintiff broke away from the officers and started to run. (Doc. # 23-2, Terry Aff. ¶ 15; Doc. # 21-3, Richardson Aff. ¶ 2.) The parties disagree, however, as to the events that took place after Plaintiff's attempt at escape. Plaintiff argues that he freely stopped running after six or seven steps because he realized that running was futile. (Doc. # 23-2, Terry Aff. ¶ 15.) He avers that, after running six or seven

steps, he stopped, raised his hands in a surrender position above his head, and yelled "I give up."

(Doc. # 23-2, Terry Aff. ¶ 15.) Plaintiff asserts that while in the surrender position, Richardson

struck him in the head and tackled him to the ground. (Doc. # 23-2, Terry Aff. ¶ 16.)

Richardson in contrast contends that Plaintiff tried to break away and escape, but that

Richardson was able to grab the fleeing Plaintiff with both hands, at which point they fell to the

ground together. (Doc. # 21-3, Richardson Aff. ¶ 2.) Richardson asserts that the officers "used

no more force [than] was necessary" to permit them to arrest Plaintiff. (*Id.* ¶ 3.)

Plaintiff avers that Richardson continued to strike him while the two were on the ground.

(Doc. # 23-2, Terry Aff. ¶ 16.) Richardson contends that Plaintiff's hands were under Plaintiff's

body, which created a safety issue. (Doc. # 21-3, Richardson Aff. ¶ 2.) Richardson states that he

ordered Plaintiff to place his hands away from his body, and once Plaintiff refused, Peters came

over and struck Plaintiff with his flashlight. (*Id.*) Purportedly fearing that Plaintiff was

attempting to retrieve a gun, Richardson states that because the flashlight strikes were

ineffective, he punched Plaintiff several times in the head and face. (*Id.*)

The officers–except for Carney, who states that she did not see this portion of the

incident–assert that after seeing Peters and Richardson struggling with Plaintiff, Everhart came

over and pulled one of Plaintiff's hands out from underneath him, at which point Plaintiff

stopped resisting. (Doc. # 21-4, Everhart Aff. ¶ 2; Doc. # 21-3, Richardson Aff. ¶ 2.) Plaintiff

disagrees and asserts that he never resisted during the encounter. (Doc. # 23-2, Terry Aff. ¶ 16-

18.) He alleges that while he was on the ground, Richardson, Everhart, Rhodeback, and Peters

sat on him, kicked him, and struck him with their "fists, hands, fingers, thumbs, knees, arms,

elbows, legs, buttock[s], and flashlight and batons."[3]  (Doc. # 23-2, Terry Aff. ¶ 17.)  Plaintiff

also asserts that Defendants violently rolled him onto his stomach, sat on him, and continuously

struck and kicked him. (Doc. # 23-2, Terry Aff. ¶ 18.)  Plaintiff avers that he screamed and cried

out that he "could not breath[e]," but that Defendants ignored his cries and continued to assault

him.  (Doc. # 23-2, Terry Aff. ¶¶ 20-21.)  Plaintiff contends that while he was handcuffed,

Richardson accused Plaintiff of stealing his badge, threatened him, and struck Plaintiff once

more.  (Doc. # 23-2, Terry Aff. ¶ 26.)

In light of the foregoing and cognizant of the applicable summary judgment standard that

must control today's analysis, this Court is not able to agree with Defendants that summary

judgment is proper.  There is a factual dispute as to whether Defendants attacked Plaintiff by

striking, kicking, and sitting on him while Plaintiff was on the ground.  There is also a factual

dispute as to whether Plaintiff was resisting Defendants during the incident, and whether

Plaintiff was struck after being subdued and even handcuffed.  Plaintiff has therefore presented

an excessive force claim that can survive summary judgment because there is a genuine issue as

to the extent of force applied and the context in which that occurred.

The Sixth Circuit has cautioned that "[s]ummary judgement on a claim of excessive force

is inappropriate where the parties dispute virtually all of the essential facts surrounding the

excessive force claim because it impossible to determine whether the force used was reasonable

without choosing between the parties sharply different factual accounts."  *Jackson v. Hoylman*,

933 F.2d 401, 403 (6th Cir. 1991).  A genuine issue of material fact exists here as to the nature

---

[3]  The Court notes that Plaintiff indeed asserts that the officers struck him with their
buttocks, although he does not explain precisely how this occurred.  (Doc. # 23-2, Terry Aff. ¶
17.)

and extent of the apprehension of Plaintiff.  This Court simply cannot say that there has been no

constitutional violation when critical material facts are in dispute.  These disputed facts, which

when necessarily viewed in a light most favorable to Plaintiff suggest possible unreasonable

conduct, preclude application of qualified immunity at this juncture and foreclose the requested

grant of summary judgment on Plaintiff's excessive force claims.

This conclusion informs the officers' related request for summary judgment on Plaintiff's

state law claims for assault and battery.  Ohio law provides that the tort of assault consists of

> the willful threat or attempt to harm or touch another offensively, which threat or
> attempt reasonably places the other in fear of such contact.  The threat or attempt
> must be coupled with a definitive act by one who has the apparent ability to do
> the harm or to commit the offensive touching. An essential element of the tort of
> assault is that the actor knew with substantial certainty that his or her act would
> bring about harmful or offensive contact.

*Stevens v. Provitt*, No. 2002-T-0076, 2003 WL 23097088, at *3 (Ohio App. 11 Dist. Dec. 31,

2003) (quoting *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148, 1154

(1993)).  The tort of battery exists when a person acts with the intent to cause a harmful or

offensive contact and such a harmful contact actually results.  *Love v. City of Port Clinton*, 37

Ohio St. 3d 98, 99, 524 N.E.2d 166, 167 (1988) (citing Restatement of the Law 2d, Torts (1965)

25, Section 13).

Peters and Richardson argue that they are entitled to qualified immunity–which does not

apply, as described–and all the individual officers assert that they are entitled to immunity under

Ohio Rev. Code § 2744.03(A)(6).  That state statute creates a presumption of immunity for

political subdivision employees, subject to the following exceptions:

> (a) The employee's acts or omissions were manifestly outside the scope of the
> employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.  Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code § 2744.03(A)(6).  Directing the Court to these exceptions, Plaintiff argues that § 2744.03(A)(6)(b) applies to defeat immunity here.

The same factual dispute that precludes summary judgment on the § 1983 excessive force claims also precludes summary judgment on these state law claims.  If the jury concludes that Plaintiff had surrendered prior to the application of force, that he did not resist, that Richardson, Everhart, Rhodeback, and Peters then acted with excessive force, and that the officers were more than merely negligent, then a jury could conclude that the officers acted unreasonably.  Such action could constitute an act done with a malicious purpose, in bad faith, or in a wanton or reckless manner to paraphrase the § 2744.03(A)(6)(b) immunity exception.  Necessarily constrained to view the facts in Plaintiff's favor, this Court concludes that the factual dispute and the § 2744.03(A)(6)(b) exception to immunity defeats reliance on immunity by Richardson, Everhart, Rhodeback, and Peters to obtain summary judgment on Plaintiff's assault and battery claims.

## C.  Intentional and Negligent Infliction of Emotional Distress Claims

Defendants next move for summary judgment on Plaintiff's claims for the intentional and negligent infliction of emotional distress.  In regard to the claim for the intentional infliction of emotional distress, it is well settled that under Ohio law that "[o]ne who by extreme and

17

outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983), *partially abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464, 866 N.E.2d 1051 (2007) (addressing false-light invasion of privacy).  The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' "

*Williams v. York Int'l Corp.*, 63 F. App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)).  The standard in Ohio imposes liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' "  *Torres v. White*, 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)).  The standard has also been described as requiring facts indicating conduct that a reasonable person could conclude is "beyond all possible bounds of decency."  *Cf. Liadis v. Sears, Roebuck and Co.*, 47 F. App'x 295, 299 (6th Cir. 2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard) (quoting *Yeager,* 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 F. App'x at

756-57 (same).

Even assuming *arguendo* that Plaintiff has presented evidence of the first two elements of his claim, Plaintiff has failed to allege a requisite psychic injury.  An action for the intentional infliction of emotional distress requires not only outrageous conduct but also a resulting emotional injury that is "both severe and debilitating."  *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 451 N.E.2d 759.  But Plaintiff does not have enough evidence to sustain a finding that he has suffered severe emotional distress.

Plaintiff contends that while handcuffed, he experienced "injuries, fear, discomfort, and extreme anxiety."  (Doc. # 23-2, Terry Aff. ¶ 36.)  Plaintiff also asserts that he incurred medical expenses for treatment directly related to the assault.  (Doc. # 23-2, Terry Aff. ¶ 37.)  Plaintiff fails, however, to indicate that *any* of the treatment was for psychological needs.  Plaintiff also fails to point to any psychic injury that extends beyond the momentary fear and anguish he asserts he experienced while the alleged force was being applied against him.  Although Plaintiff contends that the serious emotional harm that he suffered included humiliation and embarrassment, the lack of any details or context surrounding these assertions do not enable them to rise to a claim of severe emotional distress.[4]  No reasonable jury could conclude based

---

[4]  The Court notes that Plaintiff failed to file one page of his own affidavit, which means that his affidavit as filed omits paragraphs 28 through thirty-six.  *See* Doc. # 23-2, Terry Aff. Although this failure perhaps explains the lack of submitted evidence concerning the extent and nature of Plaintiff's alleged psychological issues, there is nonetheless an unexcused dearth of evidence targeting these elements.  Nor does the verified complaint that Plaintiff attached to his memorandum in opposition present sufficient evidence that would permit a reasonable juror to find for Plaintiff.  (Doc. # 23-5.)  The attached document was not filed as the complaint in this case, but is apparently from the prior, dismissed case; the verification was executed on February 23, 2004, and the Complaint in this case was filed on August 23, 2006 and contains no verification.  But even assuming *arguendo* that such a verified complaint can constitute summary judgment evidence here, *see Turney v. Catholic Health Initiatives*, 35 F. App'x 166, 168 (6th

on the meager evidence before this Court that Plaintiff's psychic injury was debilitating.  As a result, Defendants are entitled to judgment in their favor on the claim of intentional infliction of emotional distress.  *See Torres*, 46 F. App'x at 756 (explaining that "Plaintiff has not demonstrated 'debilitating emotional injury' " because "even assuming the existence of proximate cause, Plaintiff cannot show the fourth element-that he suffered serious mental anguish").

Plaintiff's claim for the negligent infliction of emotional distress also fails to evade summary judgment.  Defendants assert that the claim must fail because, under Ohio law, the claim covers only those who are in the vicinity of an event, rather than the actual victim of an event.  The Sixth Circuit has recognized that under Ohio law, " '[l]iability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries.' "  *Williams v. York Int'l Corp.*, 63 F. App'x 808, 814 (6th Cir. 2003) (quoting *Tohline v. Cent. Trust Co.,* 48 Ohio App.3d 280, 549 N.E.2d 1223, 1228 (1988)).  *See also Wells v. City of Dayton*, 495 F. Supp. 2d 797, 815 (S.D. Ohio 2006).  Regardless of the reach of the tort, however, Plaintiff's claim must still fail because, as noted, Plaintiff has not presented evidence of a serious emotional injury.  Accordingly, the Court must grant summary judgment on both state law emotional distress claims.

### D.  City Liability: *Monell* and State Law Claims

Defendant the City of Columbus also moves for summary judgment on Plaintiff's § 1983

---

Cir. 2002) (citing *Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992)), the Court is still left with conclusory statements of psychic injury without an indication that they were severe and debilitating.  The verified complaint allegations therefore fail to salvage the emotional distress claims.

claims, which include negligent hiring, negligent retention, failure to train, and failure to discipline. In response, Plaintiff's memorandum in opposition does not address the merits of these claims, but instead states that "Plaintiff now voluntarily dismisses all of his claims against . . . the City of Columbus without prejudice." (Doc. # 23, at 1.) Because this attempted dismissal is of no effect for the reasons explained above, the Court must proceed to determine whether summary judgment is appropriate here.

It is well settled that *respondeat superior* cannot provide a basis for liability in this action. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). Thus, to satisfy his burden, Plaintiff must demonstrate the existence of and impropriety of an involved policy. This is because the Sixth Circuit has explained:

> Municipalities are not ... liable for every misdeed of their employees and agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §§ 1983." [*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978).] This circuit has stated that to satisfy the *Monell* requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993). What constitutes a *Monell* policy or custom is therefore most often of critical import to § 1983 actions such as the case *sub judice*. The United States Supreme Court has held:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate

indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  The Sixth Circuit has discussed this possibility:

> A city may also be liable, in narrow circumstances, for failure to train its officials, if that failure gives rise to a clearly foreseeable violation of constitutional rights reflecting deliberate indifference to them:
>
> > "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."

*Sell v. City of Columbus*, 47 F. App'x 685, 691-92, (6th Cir. 2002) (quoting *City of Canton,* 489 U.S. at 390 ) (footnotes omitted).  The ultimate focus "[i]n resolving the issue of a [municpality's] liability, . . . must be on adequacy of the training program in relation to the tasks the particular officers must perform."  *City of Canton*, 489 U.S. at 390.

The instant case does not present a failure to train or supervise claim upon which a reasonable jury could find for Plaintiff.  The City of Columbus has produced evidence via an affidavit from Chief of Police James G. Jackson that no custom, policy, or practice exists that could create city liability here.  (Doc. # 21-7, Jackson Aff.)  In contrast, Plaintiff has failed to point to any city custom, policy, or practice related to a constitutional deprivation.  *See Liptak v. City of Niles, Ohio*, 198 F.3d 246, 1999 WL 1045100, at *5 (6th Cir. 1999) (unpublished table decision) (no § 1983 recovery where a plaintiff fails cite to any official city policy or custom).  He has failed to create a genuine issue of material fact as to whether the city's training or

supervision amounted to deliberate indifference to the rights of those with whom officers come into contact. *Id.* at *7. Nor does Plaintiff offer an official declaration of a flawed policy, custom, or practice. *See e.g.*, *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (holding that the testimony of a county jail official established a policy or custom sufficient for § 1983 liability). Thus, even viewed in a light most favorable to Plaintiff, the only evidence before this Court supports summary judgment in favor of the City of Columbus on Plaintiff's *Monell* claims.

This leaves the city's request for summary judgment on Plaintiff's state law claims against the City of Columbus. The City of Columbus posits that, as a political subdivision, it is immune from tort liability under the doctrine of sovereign immunity set forth in Ohio Rev. Code § 2744.02(A)(1). That statutory provision states:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1). Determining whether a political subdivision is immune under this statute involves a three-tiered analysis. This analysis requires asking, first, whether a "political subdivision" is involved and whether it was engaging in a "governmental or proprietary function" at the time of the incident allegedly giving rise to liability; if the answers to both questions are yes, then the general rule is that there is no liability. Second, a court must ask whether any of the various exceptions to immunity apply. Third, if immunity does not apply, a court must inquire whether a political subdivision qualifies for any of several potential statutory defenses. *Hubbard v. Canton City Sch. Bd. of Educ.*, 97 Ohio St. 3d 451, 453-55, 780 N.E.2d 543, 546-47 (2002); *Green Cty. Agric. Soc'y v. Liming*, 89 Ohio St. 3d 551, 557, 733 N.E.2d

1141, 1146 (2000); *Carter v. City of Cleveland*, 83 Ohio St. 3d 24, 28, 697 N.E.2d 610, 614-15 (1998).

It is beyond question that the City of Columbus is a "political subdivision" within the meaning of the statute and that its officers were engaging in either a "governmental or proprietary function." *Green Cty. Agric. Soc'y v. Liming*, 89 Ohio St. 3d at 556-57, 733 N.E.2d at 1146 (discussing interaction between Ohio Rev. Code § 2744.02(A)(1) and (B)). A "political subdivision" is a "a municipal corporation, township, county, school district, or other body corporation and politic responsible for governmental activities in a geographic area smaller than that of a state." Ohio Rev. Code § 2744.01(F). Additionally, under Ohio Rev. Code § 2744.01(C)(2)(a), a "governmental function" includes "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection." *See* Ohio Rev. Code § 2744.01(C)(1) (defining "governmental function" to include "a function of a political subdivision that is specified in [Ohio Rev. Code § (C)(2)]").

After concluding that the first requirement has been fulfilled and that the general rule of political subdivision immunity applies, the second tier of the requisite analysis presents the question of whether any of the exceptions to the immunity doctrine apply. *Green Cty. Agric. Soc'y*, 89 Ohio St. 3d at 557, 733 N.E.2d at 1146. These exceptions, set forth in Ohio Rev. Code § 2744.02(B), generally provide that a "political subdivision" may be liable in damages in a civil action for injuries (1) caused by the negligent operation of a motor vehicle, (2) caused by the negligent performance of proprietary functions, (3) caused by a failure to keep roads, highways, and streets open, in repair, and free from nuisance, (4) caused by negligence on the grounds of a building used for governmental purposes, or (5) for which liability is expressly imposed by

statute.  Ohio Rev. Code § 2744.02(B)(1)-(5).  *See also Culberson v. Doan*, 125 F. Supp. 2d 252,

281 (S.D. Ohio 2000).  The Ohio Supreme Court has specifically spoken to these points, noting:

> R.C. 2744.02(B) provides five exceptions to the immunity created in R.C.
> 2744.02(A)(1) for political subdivisions. One of the exceptions, R.C. 2744.02(B)(2),
> establishes liability of political subdivisions for injuries caused by negligent acts
> performed by employees with respect to proprietary functions.  There is, however,
> no such general exception for governmental functions.  Consequently, except as
> specifically provided in R.C. 2744.02(B)(1), (3), (4), and (5), with respect to
> governmental functions, political subdivisions retain their cloak of immunity from
> lawsuits stemming from employees' negligent or reckless acts.

*Wilson v. Stark Cty. Dep't of Human Servs.*, 70 Ohio St. 3d 450, 452, 639 N.E.2d 105, 107

(1994) (citing *Garrett v. Sandusky*, 68 Ohio St. 3d 139, 624 N.E.2d 704 (1994)).  As the City of

Columbus correctly notes in its briefing, none of these exceptions apply to the facts of this case.

Thus, under the second-tier of the analysis, the city remains entitled to immunity.

The Court therefore need not discuss the third and final tier of the analysis, which

requires an assessment of whether a political subdivision qualifies for any of the defenses

provided by statute, but only if statutory immunity does not apply.  *Green Cty. Agric. Soc'y*, 89

Ohio St. 3d at 557, 733 N.E.2d at 1146; *see also* Ohio Rev. Code § 2744.03 (setting forth

defenses and immunities used to establish nonliability).  The City of Columbus is entitled to

summary judgment on Plaintiff's state law claims on the grounds of immunity.

## IV.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for

summary judgment.  (Doc. # 21.)  The excessive force claims, as well as the assault and battery

claims, remain pending against Defendants Richardson, Everhart, Rhodeback, and Peters.

Additionally, Plaintiff's claims under 42 U.S.C. § 1985, which the motion for summary

25

judgment did not target, remain pending against all defendants, the City of Columbus, Anthony

Richardson, Eric Everhart, Pamela Rhodeback, Laurie Carney, and Tim Peters.[5]

      **IT IS SO ORDERED**.

                    _____/s/ Gregory L. Frost_____

                    GREGORY L. FROST

                    UNITED STATES DISTRICT JUDGE

---

[5] No defendant moved for summary judgment on Plaintiff's claims under § 1985, despite their explicit assertion in Plaintiff's Complaint.  (Doc. # 2, Compl. ¶¶ 70, 82.)

26